**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| SERVICE EXPERTS LLC,<br><br>PLAINTIFF,<br><br>v.<br><br>KEN BAXTER,<br><br>DEFENDANT. | CIVIL ACTION<br><br>Case No. 1:21-cv-18281-RBK-AMD |

**PLAINTIFF SERVICE EXPERTS LLC'S MEMORANDUM OF LAW AND ITEMIZED REQUEST FOR FEES IN SUPPORT OF ITS PETITION FOR ATTORNEYS' FEES**

Defendant Service Experts LLC ("Service Experts") respectfully submits this Memorandum of Law and Itemized Request for Fees in Support to its Petition for Attorneys' Fees in accordance with this Court's December 11, 2024, Order (ECF 112) and Local Rule of Civil Procedure 54.2, for reasonable expenses, including attorneys' fees, to be awarded against Defendant, Ken Baxter ("Defendant").

## TABLE OF CONTENTS

**I. FACTUAL BACKGROUND ........ 1**

**II. SERVICE EXPERT IS ENTITLED TO ATTORNEYS' FEES PURSUANT TO THE DTSA AND NJTSA ........ 4**

**A. The Lodestar Formula ........ 7**

**B. Ogletree Staffed this Matter According to What was Necessary. ........ 8**

**C. Counsel for Service Experts Billed at Reasonable Hourly Rates. ........ 9**

**D. Service Experts' Counsel Expended a Reasonable Number of Hours in Connection with Prosecuting its Claims against Defendant. ........ 9**

**E. Service Experts Is Entitled to Its Attorneys' Fees Incurred in Preparing the Instant Petition. ........ 11**

**III. CONCLUSION ........ 11**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Blum v. Stetson*,
465 U.S. 886 (1984)....................9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................8

*Material Techs. Inc. v. Carpenter Tech. Corp.*,
No. 01-2965 (SRC), (D.N.J. Sept. 16, 2004)....................11

*Piquante Brands Int'l, Ltd.*, *v. Chloe Foods Corp.*,
No. 3:08-cv-4248 (FLW), 2009 U.S. Dist. LEXIS 50557 (D.N.J. June 9, 2009)....................5

*Rode v. Dellarciprete*,
892 F.2d 1177 (3d Cir. 1990)....................8

*Washington v. Philadelphia Cnty. Court of Common Pleas*,
89 F.3d 1031 (3d Cir. 1996)....................9

**Statutes**

18 U.S.C. § 1836(b)(3)(D)....................4

Defend Trade Secrets Act....................1

Defend Trade Secrets Act....................4

DTSA....................4, 5, 7

federal Defend Trade Secrets Act....................6

N.J. Stat. Ann. § 56:15-6....................4

New Jersey Trade Secret Act....................6

New Jersey Trade Secrets Act....................1

New Jersey Trade Secrets Act....................4

NJTSA....................4, 5, 7

**Other Authorities**

Defendant. **Exh A**. ....................3

Federal Rule of Civil Procedure 55(b)(2)....................4

Request No. 4 ........ 5

Rule 36(a)(3) ........ 7

Rule 37 ........ 2

## I. FACTUAL BACKGROUND

On October 8, 2021, Service Experts initiated this action by filing a Complaint in the United States District Court for the District of New Jersey, seeking an injunction against Defendant and Service Champions, LLC ("Service Champions") and alleging breach of contract and misappropriation of trade secrets under the New Jersey Trade Secrets Act ("NJTSA") and Defend Trade Secrets Act ("DTSA"), as well as interference with contractual relationships against Service Champions. (ECF No. 1). On October 17, Service Champions filed a Motion to Dismiss for lack of personal jurisdiction. (ECF No. 14). On November 4, 2021, Defendant filed a Motion to Dismiss for failure to state a claim. (ECF No. 25). On November 24, Service Experts filed an Amended Complaint, including the same five counts as the original Complaint. (ECF No. 28). On December 30, 2021, the Court granted Service Champions' Motion to Dismiss for lack of personal jurisdiction, and Service Champions was dismissed from the case. (ECF No. 37).

On August 19, 2022 Defendant's employment with Service Champions ended and, subsequently on August 31, 2022, counsel for Defendant filed a Motion to Withdraw as Counsel for Defendant. (ECF No. 49). On October 25 and November 15, 2023, the Court held hearings on the Motion to Withdraw. (*See* ECF No. 68). On November 15, Defendant said that he did not oppose counsel's Motion to Withdraw, and he would seek new counsel or proceed *pro se*. (*See id.*). On November 21, 2022, the Court granted counsel's Motion to Withdraw. (*Id.*). On August 1, 2023, the Court filed an Order scheduling a status conference for August 14. (ECF No. 87).

On August 11, 2023, in conjunction with filing a proposed scheduling order, Service Experts wrote to the Court after counsel for Service Experts failed to receive any response from Defendant despite numerous attempts to contact him to discuss the case. (ECF No. 89). Following a status conference on August 14, the Court issued an Amended Scheduling Order extending the case deadlines. (ECF Nos. 90 and 91).

On September 5, 2023, Service Experts sent Defendant the following discovery documents: (1) Plaintiff Service Experts' First Request for Admissions ("RFA"); (2) Plaintiff's Third Request for Production of Documents ("Request for Production"); and (3) a Notice of Deposition for Defendant's deposition, to be held on October 10, 2023. *See* Declaration of Daniel P. O'Meara ("O'Meara Declaration") at ¶ 3, (ECF No. 96-2). Counsel for Service Experts explicitly stated that should Defendant be unable to appear for his deposition on October 10, Defendant should contact counsel. *Id.* On October 6, 2023, after failing to hear from Defendant, counsel for Service Experts confirmed Defendant's failure to respond and reminded Defendant of his upcoming deposition on October 10. *Id.* at ¶¶ 5-6.

On October 9, 2023, counsel for Service Experts again contacted Defendant to remind him of his upcoming deposition. *Id.* at ¶ 7. At 4:48 pm that day--the day immediately before the noticed deposition--Defendant responded that he was unable to attend and would like to reschedule for the following week. *Id.* at ¶ 8. Counsel for Service Experts subsequently sought a date Defendant would be available. *Id.* at ¶ 9. Defendant again failed to respond. *Id.*

On October 12, 2023, Service Experts noticed Defendant's deposition for October 18, 2023, during the week he indicated he was available. *Id.* at ¶¶ 9-11. The following day, Defendant responded that "the best date [he] had available" was on October 25. *Id.* at ¶ 12. Accordingly, on October 16, 2023, Service Experts noticed Defendant's deposition for October 25, 2023. *Id.* at ¶ 13. Counsel for Service Experts also reminded Defendant of the Request for Production he had still not responded to. *Id.*

On October 23, 2023, Defendant indicated that he would need to reschedule the deposition because he was "no longer able to represent [him]self" and had sought legal counsel. *Id.* at ¶ 14. As previously noted, when Defendant's counsel withdrew from the matter in November 2022,

Defendant indicated he would seek new counsel, or if unable to obtain counsel, proceed *pro se*, which he has done until this point. *Id.* at ¶ 15.

On November 9, 2023, Service Experts filed an Application for Sanctions against Defendant seeking, among other things, an entry of default against Defendant. (ECF No. 96). On March 15, 2024, the Honorable Ann Marie Donio, United States Magistrate Judge, entered a Report and Recommendation (R&R) that Defendant's Answer be stricken and that default be entered against him. (ECF No. 104). On March 19, 2024, counsel for Service Experts sent Defendant an email attaching the R&R and informing Defendant that he had 14 days to file objections. *See* Exh. A at ¶20. Defendant did not file any objections within the 14 days allotted. On April 8, 2024, this Court entered an Order adopting Magistrate Judge Donio's Report and Recommendation in its entirety. (ECF No. 105).[1]

On April 25, 2024, after nearly six month of silence from Defendant, Service Experts filed a Motion for Entry of Default Judgment against Defendant (ECF No. 106). On May 31, 2024, Judge Kugler entered an order granting Service Experts motion in part and denying it in part. (ECF No. 108). Specifically, the Court ordered, among other things: (1) requiring Defendant to return all Service Experts' materials within Defendant's possession; (2) requiring Defendant to not disclose Service Experts' confidential information; (3) finding that Service Experts established that its CORE Sales Training Program is confidential and is a trade secret under the Defend Trade Secrets Act and New Jersey Trade Secrets Act; (4) permanently binding Defendant and all other persons in active concert or participation with him who receive actual notice of the Order; and (5)

[1] In fact, as of the date of this filing, counsel for Service Experts has not heard from Defendant or anyone purporting to represent Defendant. **Exh A**. at ¶ 15. Further, Service Experts has not received responses, let alone any documents, in response to Service Experts' Request for Admissions or Service Experts' Third Request for Production. *Id.* at ¶ 4.

retaining jurisdiction to enforce its judgment and permanent injunction and to consider any subsequent motions for attorneys' fees, expenses, and costs. (*Id.*). However, the Court denied Service Experts request for damages subject to a hearing pursuant to Federal Rule of Civil Procedure 55(b)(2) on the amount of damages. (*Id.*).

On December 10, 2024, Service Experts filed a letter with the Court requesting to proceed solely with a request for an award of attorneys' fees as its damages in this case via the instant Petition in lieu of a hearing. (ECF No. 110). On December 11, 2024, the Court entered an Order granting Service Experts' request and ordering Service Experts to file this Petition within 30 days of the Order. (ECF No. 112). Accordingly, Service Experts submits this Petition to seek attorneys' fees incurred while seeking to prosecute this matter against Defendant.[2]

## II. SERVICE EXPERT IS ENTITLED TO ATTORNEYS' FEES PURSUANT TO THE DTSA AND NJTSA

The DTSA and NJTSA permit a court to award reasonable attorneys' fees to the prevailing party upon a showing that a plaintiff's trade secret was willfully and malicious misappropriated. 18 U.S.C. § 1836(b)(3)(D); N.J. Stat. Ann. § 56:15-6. While the statutes do not explicitly define "willful" or "malicious," courts in New Jersey have held that a plaintiff may prove willfulness by "demonstrating that the defendant continued infringing behavior after being given notice." *Piquante Brands Int'l, Ltd., v. Chloe Foods Corp.*, No. 3:08-cv-4248 (FLW), 2009 U.S. Dist. LEXIS 50557, at *18 (D.N.J. June 9, 2009).

Here, it is undisputed that Service Experts has established its CORE sales training program constitutes a trade secret pursuant to the DTSA and NJTSA, as the Court has already entered an

---

[2] Service Experts notes that its Petition seeks attorneys' fees in relation to the fees incurred against Defendant only. Service Experts does not seek the Court to award it attorneys fees for the fees incurred prosecuting this case against previously dismissed Service Champions, LLC.

order recognizing the sales training program as a trade secret. (ECF No. 108). Moreover, through discovery, Service Experts has established that Defendant has willfully and malicious misappropriated its trade secrets. On September 5, 2023, Service Experts served Defendant with RFAs demanding that Defendant serve a written response admitting to the truth of the statements asserted, attached hereto as **Exhibit A**. Service Experts' RFAs included, among other things, the following:

- **4**. Service Experts has invested significant resources to develop know-how, information, methods and techniques to: (a) maintain, develop and nurture business relationships with customers and prospective customers; (b) learn those customers' needs; (c) develop innovative solutions to meet those customers' needs; (d) recruit, develop, train and maintain qualified employees to develop new customer accounts and sell Service Experts' products and services, as well as provide services to support Service Experts' unique customer offerings; (e) set appropriate pricing to attract and maintain customers; (f) plan and set up necessary infrastructure, logistics, customer support, procurement, policies and procedures and other components to support Service Experts' unique product and service offerings.

- **5**. The know-how, information, databases and methodologies developed by Service Experts described in Request No. 4 are valuable, confidential, and proprietary to Service Experts and are not readily available to Service Experts' competitors or the public.

- **6**. The know-how, information, databases and methodologies developed by Service Experts described in Request No. 4 are have significant economic value to Service Experts, and would be of significant economic value to competitors in the HVAC, plumbing and/or other similar or adjacent industries generally.

- **7**. Service Experts has developed proprietary employee sales training techniques.

- **12**. Service Experts sales training materials and process qualify as trade secrets under the federal Defend Trade Secrets Act.

- **13**. Service Experts sales training materials and process qualify as trade secrets under the New Jersey Trade Secret Act.

- **14**. You used Service Experts sales training materials and process to build sales training materials and process for Service Champions.

- **16**. The sales training materials you developed for Service Champions while at Service Champions were copied from sales training materials of Service Experts.

- **18**. You entered into a Confidentiality, Non-Competition, Non-Solicitation, and Non-Disparagement Agreement with Service Experts prior to being given access to Service Experts' sales training materials.

- **19**. When You retained Service Experts sales training materials after your employment with Service Experts, You breached the Confidentiality, Non-Competition, Non-Solicitation, and Non-Disparagement Agreement between You and Service Experts.

- **20**. When You used Service Experts sales training materials to develop sales training materials for Service Champions, You breached the Confidentiality, Non-Competition, Non-Solicitation, and Non-Disparagement Agreement between You and Service Experts.

- **21**. Service Champions is a direct competitor of Service Experts.

- **22**. At the time You left Service Experts, You represented to Service Experts that You had returned all confidential materials, as required by the Agreement You signed with Service Experts, even though You retained over 350 pages of physical documents.

- **25**. You and Service Champions used the documents from Service Experts that you retained, in competition with Service Experts.

- **26**. You willfully and maliciously misappropriated Service Experts' trade secrets.

- **30**. Service Champions involuntarily terminated your employment with Service Champions because of your acts and omissions with respect to Service Experts training materials.

*See* **Exh. C**. Defendant did not respond to Service Experts' RFAs within 30 days of being served.[3] Thus, pursuant to Rule 36(a)(3), the entirety of the RFAs served upon Defendant, including the RFAs detailed above, are deemed admitted. Fed. R. Civ. Pro. 36(a)(3). Accordingly, based on Defendant's admissions, he admits that he was aware of his infringing behavior and that he chose to continue his unlawful behavior. In fact, by not responding to RFA No. 26, Defendant expressly admitted that he willfully and malicious misappropriated Service Experts' trade secrets.

[3] To date, Defendant still has not responded to Service Experts Request for Admissions, nor did Baxter ever appear for a deposition in the merit discovery portion of this case.

Accordingly, Service Experts has established that Defendant willfully and maliciously misappropriated its trade secrets, entitling Service Experts to an award of attorneys' fees.

The work for which Service Experts seeks payment of attorneys' fees is supported by the Declaration of Service Experts attorney Immon Shafiei (hereinafter "Shafiei Declaration"), which is incorporated herein by reference. The Shafiei Declaration includes all invoices submitted to Service Experts related to the fees incurred prosecuting this case against Defendant from this matter's inception as Exhibit A and a chart of unbilled time in December 2024 and January 2025 as Exhibit B. The decision by Service Experts to seek attorneys' fees against Defendant is reasonable based on Service Experts' showing that Defendant's conduct was willful and malicious, entitling Service Experts to an award of attorneys' fees under the DTSA and NJTSA. Accordingly, simply the amount and not Service Experts' entitlement to reasonable fees is at issue.

**A. The Lodestar Formula.**

Service Experts spent a reasonable amount on attorneys' fees in connection with prosecuting its case against Defendant. As the Supreme Court held, "[t]he most useful starting point" for a fee calculation is the hours "reasonably expended on the litigation multiplied by a reasonable hourly rate"—often called the lodestar calculation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Once a district court determines that a party is entitled to a fee award, this Circuit's well-established burden-shifting framework requires the moving party to show the reasonableness of fees and costs by providing evidence to support the hours worked and rates claimed. Then the opposing party may challenge the reasonableness of the amount requested through affidavits and other evidence. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

Ogletree attorneys keep contemporaneous and descriptive records of time spent on cases and have done so in the instant matter. (Shafiei Decl. at ¶5). At the close of each month, time

entries are carefully reviewed to ensure bills sent to clients are accurate. (*Id.* at ¶6). Clients are typically invoiced within thirty (30) days of the close of a month and, unless other arrangements are made, clients are expected to the pay their invoices within thirty (30) days of receipt. (*Id.* at ¶7). In connection with this case, Ogletree has invoiced Service Experts on an hourly basis derived from the total hours expended on prosecuting Service Experts case against Defendant multiplied by each attorney's hourly rate. (*Id.* at ¶¶10-12). To date, Ogletree has billed Service Experts $293,544.50 in connection prosecuting its case against Defendant, which Service Experts has paid in full. The hourly fees are billed to Service Experts based on the specific work each attorney performed in this matter. For purposes of this Itemized Request for Fees, we have identified the time entries solely related to Service Experts' litigating its case against Defendant and have not included time entries solely related to then-party Service Champions or any aspects of the case pertaining to Service Experts' claims against then-party Service Champions. The undersigned counsel feels that the sum of the identified entries accurately reflects the value of the time allocated to the work described and is a conservative and precise measure of the work performed. (*Id.*).

**B. Ogletree Staffed this Matter According to What was Necessary.**

In accordance with standard practice, Ogletree has staffed this case with one shareholder, Daniel P. O'Meara, and two associates, Immon Shafiei and Jerome Shaen. (*Id.* at ¶9)[4]. To adequately represent Service Experts without incurring unreasonable fees, Mr. O'Meara designated tasks to Mr. Shafiei and Mr. Shaen as appropriate.

[4] Mr. Shafiei performed the vast majority of the associate work in this matter. However, because Mr. Shafiei took parental leave from January 2024 – April 2024, Mr. Shaen was staffed to assist Mr. O'Meara in Mr. Shafiei's absence.

**C. Counsel for Service Experts Billed at Reasonable Hourly Rates.**

Service Experts has paid reasonable rates for its counsel's services. As to the reasonableness of the rate, in *Blum v. Stetson*, 465 U.S. 886 (1984), the Supreme Court specified that, when establishing an attorneys' reasonable hourly rate, courts should consider "prevailing market rates" for attorneys practicing in a particular location and in a particular area of the law. *Id*. at 895-96; *see also Washington v. Philadelphia Cnty. Court of Common Pleas*, 89 F.3d 1031, 1035-36 (3d Cir. 1996) (holding the general rule that a reasonable hourly rate is calculated according to the prevailing market rates in the community). Here, because this matter has spanned over the course of four years, the annual billing rate for each billing attorney changed. Accordingly, the undersigned counsel requests the following rates for each billing attorney based on the year the billing attorney worked on this matter: (1) Shareholder Daniel P. O'Meara - $550.00 per hour in 2021, $565.00 per hour in 2022, $590.00 per hour in 2023, $625.00 per hour in 2024, and $665.00 per hour in 2025; (2) Senior Associate Immon Shafiei - $365.00 per hour in 2021, $395.00 per hour in 2022, $455.00 per hour in 2023, $490.00 per hour in 2024, and $535.00 per hour in 2025; (3) Junior Associate Jerome E. Shaen – $375.00 per hour in 2023 and $410.00 per hour in 2024. These are reasonable rates commensurate with the market for employment attorneys in the Philadelphia region. (*See* Shafiei Decl. at ¶¶16-19).

**D. Service Experts' Counsel Expended a Reasonable Number of Hours in Connection with Prosecuting its Claims against Defendant.**

The fees incurred by Service Experts in connection with prosecuting its claims against Defendant were reasonable and necessary to obtain a favorable outcome and protect Service Experts' interest. The total amount of fees sought is in relation to: (1) preparing Service Experts' Complaint and Amended Complaint; (2) preparing and serving merit discovery upon Defendant; (3) reviewing and preparing responses to Defendant's initial written discovery when Defendant

was previously represented by counsel; (4) attending and participating in numerous proceedings before the Court; (5) engaging in numerous conferences with Defendant's former counsel; (5) engaging in motion practice related to Defendant's former counsel's Motion to Withdraw; (6) preparing and serving third-party discovery upon Defendant's former employer, Service Champions; (7) reviewing thousands of documents produced by both Defendant and third-party Service Champions; (8) engaging in conferences regarding Defendant's and third-party Service Champions' deficient discovery responses; (9) communicating with Defendant regarding his deposition following the withdrawal of his former counsel; (10) preparing Service Experts' Motion to Disqualify Defendant's former counsel from representing third-party Service Champions; (11) preparing Service Experts' Motion for Summary Judgment against Defendant; (12) preparing Service Experts' Motion for Default Judgment against Defendant; (13) preparing Service Experts' Motion for Sanctions against Defendant; (14) preparing for Defendant's deposition that Defendant untimely cancelled on numerous occasions; (15) preparing motions to modify the Court's Scheduling Orders; (16) investigating Service Experts' claims against Defendant; (17) engaging in motion practice related to Defendant's deficient discovery responses; and (18) preparing the instant Petition (*Id.* at ¶¶14-16).

This request is supported by the time entries and fees of Service Experts' Counsel for such work. (*Id.* at ¶31, Exh. A-B). Counsel for Service Experts made every effort to perform the tasks required in the most efficient and cost-effective manner possible. In summary, Service Experts has met the requirements under the lodestar formula, and thus is entitled to an award of their reasonable attorneys' fees. Service Experts seeks $293,544.50 for 610.10 hours worked in connection with the aforementioned fees detailed herein.

**E. Service Experts Is Entitled to Its Attorneys' Fees Incurred in Preparing the Instant Petition.**

Service Experts is also entitled to fees associated with the preparation of this Petition. "Attorney's fees and costs incurred for work performed in preparing a fee petition are recoverable." *Material Techs. Inc. v. Carpenter Tech. Corp.*, No. 01-2965 (SRC), at *14 (D.N.J. Sept. 16, 2004) (citing *Planned Parenthood of Central New Jersey v. Attorney General of the State of New Jersey*, 297 F.3d 253, 268 (3d. Cir. 2002) ("A party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application")). As explained in more detail in Mr. Shafiei's Declaration, Service Experts seeks $5,280.50 for 10.4 hours worked in connection with the Itemized Request for Fees. (Shafiei Decl. at ¶¶22-23; Exh. B).

In sum, Service Experts requests compensation for a total of $298,825.00 for 620.50 hours of work by Service Experts' Counsel. (Shafiei Decl. at ¶24).

## III. CONCLUSION

Despite countless efforts by Service Experts counsel and orders from the Court, Defendant has continued to demonstrate lack of respect for the orders of this Court and his obligation to meaningfully participate in this litigation. Nonetheless, for the reasons set forth in Service Experts' Petition and the attached Declaration, Service Experts has established that Defendant willfully and maliciously misappropriated its trade secrets, entitling Service Experts to an award of attorneys' fees in this matter. Accordingly, Service Experts respectfully requests that this Court award Service Experts $298,825.00 in reasonable attorneys' fees incurred as a result of Defendant's willful and malicious misappropriation of Service Experts trade secrets for the preparation of this Petition for Attorneys' Fees, and such further relief as this Court deems just and proper.

*{Signature on following page}*

Respectfully,

*/s/ Immon Shafiei*
Daniel P. O'Meara (Admitted *Pro Hac Vice*)
Immon Shafiei (NJ ID 245692017)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
1735 Market Street, Suite 3000
Philadelphia, PA 19103
Phone: (215) 995 2819
dan.omeara@ogletree.com
immon.shafiei@ogletree.com

Date: January 10, 2025

*Attorneys for Plaintiff*